UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACKLANE, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>BEST & FLANAGAN, LLP, et al.,<br><br>        Defendants. | Case No. 23-cv-03496-HSG<br><br>**ORDER DENYING MOTION TO CHANGE VENUE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 12, 14 |

Pending before the Court is Defendants Best & Flanagan, LLP and Daniel L. Grimsrud's motion to change venue, Dkt. No. 14, and Plaintiff Packlane, Inc.'s motion to strike affirmative defenses, Dkt. No. 12. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion to change venue and **GRANTS IN PART** and **DENIES IN PART** the motion to strike.

**I. BACKGROUND**

Packlane initially filed this action in San Francisco Superior Court in May 2023. *See* Dkt. No. 1-2, Ex. A ("Compl."). Defendants later removed the action to federal court on the basis of diversity jurisdiction. Dkt. No. 1. In the complaint, Packlane alleges that it retained Best & Flanagan, a law firm, in March 2020 to represent it as part of a potential corporate transaction with Digital Room. *See* Compl. at ¶¶ 1–2, 11–17. Digital Room had expressed interest in purchasing Packlane for $30 million in cash. *See id.* at ¶¶ 12–14, 59. Based on Best & Flanagan's legal advice, Packlane ultimately sold its assets to Digital Room in May 2022. *See id.* at ¶ 79. However, Packlane alleges that because Best & Flanagan structured the sale as an asset purchase, Packlane incurred approximately $6 million in taxes that could have been avoided had the deal

been structured differently. *Id.* at ¶¶ 1–3, 59–80. Packlane further argues that none of the Best & Flanagan attorneys, including Defendant Grimsrud, were licensed to practice law in California. *See, e.g.*, *id.* at ¶¶ 4, 26, 29–43. Based on these alleged facts, Packlane brings causes of action for breach of contract, professional negligence – legal malpractice, and breach of fiduciary duty. *See id.* at ¶¶ 81–98.

Defendants filed an amended answer to the complaint in August 2023, which includes several affirmative defenses. Dkt. No. 10 at 12–17. Defendants now move to transfer this case to the District of Minnesota, Dkt. No. 14, and Packlane moves to strike Defendants' affirmative defenses, Dkt. No. 12.

## II.  MOTION TO CHANGE VENUE

Defendants seek to transfer this action to the District of Minnesota, where they are located. *See* Dkt. No. 14. Best & Flanagan's office is located in Minneapolis, and Defendant Grimsrud is a Minnesota resident.[1] *See* Dkt. No. 14-1 ("Conners Decl.") at ¶ 4; Dkt. No. 14-2 ("Grimsrud Decl.") at ¶ 4.

### A.  Legal Standard

Where an action has been commenced in an improper venue, a court shall, upon hearing of a timely motion, dismiss the action or, if deemed to be in the interest of justice, transfer it to different venue where the case could have been properly brought. 28 U.S.C. § 1406. Venue is proper where (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) where there is "no district in which an action may otherwise be brought . . . ." 28 U.S.C. § 1391(b).

Even where a plaintiff's chosen venue is proper, a defendant may petition the court for transfer to a different district under 28 U.S.C. § 1404. "For the convenience of the parties and

---

[1] As a limited liability partnership, Best & Flanagan is considered a citizen for purposes of diversity jurisdiction in every state in which its partners reside. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *see also Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("An unincorporated association . . . has the citizenships of all of its members."). Defendants have confirmed that all the partners are residents of Minnesota. *See* Dkt. No. 14-1 at ¶ 6.

1  witnesses, in the interest of justice, a district court may transfer any civil action to any other
2  district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The moving
3  party bears the burden of showing that the transferee district is a "more appropriate forum." *See*
4  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). And the district court has
5  broad discretion in deciding whether to transfer an action. *See Ventress v. Japan Airlines*, 486
6  F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for
7  abuse of discretion. Weighing of the factors for and against transfer involves subtle considerations
8  and is best left to the discretion of the trial judge.") (citations and quotations omitted).

9      The Court engages in a two-step analysis in deciding a motion to transfer under 28 U.S.C.
10  § 1404(a). First, it determines "whether the transferee district was one in which the action 'might
11  have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28
12  U.S.C. § 1404(a)). If it is, the Court engages in an "individualized, case-by-case consideration of
13  convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting
14  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In this district, courts consider a range of
15  private interest factors (such as the plaintiff's choice of forum and the convenience of the parties,
16  witnesses, and evidence) and public interest factors (such as the familiarity of the court in each
17  forum with the applicable law, the feasibility of consolidation with other claims, any local interest
18  in the controversy, and the cost differential of litigation in the two forums). *See, e.g.*, *Jones*, 211
19  F.3d at 499; *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2
20  (N.D. Cal. Jan. 6, 2017).

21      **B.**    **Discussion**

22      The parties do not appear to dispute that this action could have been brought in the District
23  of Minnesota. *Compare* Dkt. No. 14 at 4–6, *with* Dkt. No. 26 at 2, n.1. Rather, the parties
24  disagree about whether transferring the case to the District of Minnesota would serve the
25  convenience of the parties and witnesses and promote the interests of justice.

26          **i.**    **Plaintiff's Choice of Forum**

27      Ordinarily, "the defendant must make a strong showing of inconvenience to warrant
28  upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805

3

F.2d 834, 843 (9th Cir. 1986). However, "[t]he degree to which courts defer to the plaintiff's venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *See Carolina*, 158 F. Supp. 2d at 1048 (citing cases); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D. Cal. 2005) (same); *cf. Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting in the context of a class action that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration").

At the heart of this action is the legal advice that Defendants provided Packlane relating to the Digital Room asset purchase. Packlane is headquartered in San Francisco, California. *See* Compl. at ¶ 6. And Digital Room is headquartered in Sherman Oaks, California. *Id.* at ¶ 12. The Northern District of California therefore is Packlane's residence and has a significant connection to the activities alleged in the complaint. This factor weighs against transfer.

### ii. Familiarity with Applicable Law

The parties appear to dispute what law may apply to this action. *Compare* Dkt. No. 14 at 10–11, *with* Dkt. No. 26 at 8–10. Defendants suggest that either California or Minnesota law could apply. *See* Dkt. No. 14 at 10–11. Packlane, for its part, urges that California law should apply to all three of its claims. *See* Dkt. No. 26 at 8–10. Packlane points out that its claims are based, at least in part, on the unauthorized practice of law in California and the underlying asset purchase involved California entities. *Id.* at 8–9. Yet neither party actually engages in the (analytically complex) choice-of-law analysis. In any event, the Court notes that "federal judges routinely interpret other states' laws during their tenure on the bench." *See Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019). This factor is therefore neutral.

### iii. Convenience of Parties and Witnesses

Defendants urge that the convenience of both the parties and witnesses favors transfer to the District of Minnesota. *See* Dkt. No. 14 at 8–10.

Here, where Packlane is headquartered in California and Defendants are located in

Minnesota, the convenience of the parties appears to be a neutral factor.  Still, Defendants point out that ten of the anticipated witnesses are Best & Flanagan attorneys who are named in the complaint as having worked on the Digital Room transaction.  *Id.* at 10; *see also* Compl. at ¶¶ 15, 28, 32.  Defendants point out that all its partners reside in Minnesota, and "all employees work out of [the Minneapolis, Minnesota] office."  *See* Conners Decl. at ¶¶ 4, 6.  They accordingly conclude that this factor weighs strongly in favor of transfer to the District of Minnesota.  The Court disagrees.

The Court acknowledges that the convenience to non-party witnesses is a significant factor.  In fact, some courts have explained that "[t]he relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)."  *See Saleh*, 361 F. Supp. 2d at 1160 (quotation omitted).  "In determining whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses."  *Id.* at 1160–61.

But critically, Defendants do not identify these attorney witnesses by name, indicate where they currently reside, or provide any context for their anticipated testimony.  Aside from Defendant Grimsrud, Defendants do not appear to have confirmed the residence of any of the specific attorneys who worked on the Digital Room transaction (or even whether they still work for the law firm).  *See* Dkt. No. 14 at 10; *see also* Conners Decl. at ¶¶ 4, 6.  Their centrality to the case is also not readily apparent.  Although multiple attorneys appear to have worked on the Digital Room transaction, Packlane only sued Defendant Grimsrud.  At least as alleged, Defendant Grimsrud "served as the partner and lawyer in charge of this engagement for Best & Flanagan," and held himself out as an attorney who could provide advice on "tax" and "transaction planning and execution."  *See* Compl. at ¶¶ 15–16, 18, 52–54, 58.  Packlane employees also told Defendant Grimsrud that they did not believe taxes would be owed on the assets sale, and he never corrected them.  *See id.* at ¶¶ 72–78.

On the other hand, Plaintiff indicates that employees from Digital Room will be key witnesses in the case.  *See* Dkt. No. 26 at 14.  Brett Zane, the President, Chief Financial Officer,

5

and Director at Digital Room Holdings, Inc., negotiated and signed the asset purchase agreement between Packlane and Digital Room. *Id.* And although Packlane does not indicate where Mr. Zane currently lives, he works in the Los Angeles area. *Id.* Digital Room itself is headquartered in Sherman Oaks, California. *See* Compl. at ¶ 12. In short, the only parties who would benefit from a transfer to the District of Minnesota appear to be Defendants themselves. The Court therefore finds that this factor weighs against transfer.

### iv.   Access to Evidence

Although the parties each attempt to argue that the ease of access to evidence supports their respective positions, Dkt. No. 14 at 10 and Dkt. No. 26 at 18–19, the Court disagrees. "[T]he ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easier for documents to be transferred to different locations." *Hunt*, 2019 WL 7666755, at *4 (quotation omitted). The Court has no reason to believe that documentary evidence is more accessible in one state or one district over another. This factor is neutral.

### v.   Local Interest in the Controversy

Defendants also urge that Minnesota has a stronger interest in this controversy because Best & Flanagan "is a going concern and continues to employ Minnesota residents." *See* Dkt. No. 14 at 11. Defendants appear to suggest that because Packlane sold its assets to Digital Room, California has less of an interest in this case. *Id.* The Court is not convinced. Even if Packlane were completely defunct, California still has an interest in ensuring that its citizens are represented by competent counsel. This factor is also neutral.

\*     \*     \*

Having reviewed the relevant factors,[2] the Court finds that Best & Flanagan has not met its burden of establishing that hearing this case in the District of Minnesota would better serve the convenience of the parties and witnesses or promote the interests of justice. The Court accordingly declines to exercise its discretion to transfer the case and **DENIES** the motion.

//

---

[2] Defendants acknowledge that the feasibility of consolidation with other claims and the relative congestion of the two district courts are neutral factors. *See* Dkt. No. 14 at 11.

**III.    MOTION TO STRIKE**

Packlane moves to strike all fourteen of Defendants' affirmative defenses, arguing that Defendants have failed to plead sufficient facts to make each defense plausible. Dkt. No. 12.

**A.    Legal Standard**

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." An affirmative defense is insufficiently pleaded if it fails to give the opposing party "fair notice" of the nature of the defense. *See Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). In moving to strike, a party seeks "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Because motions to strike a defense as insufficient are disfavored, they will not be granted if the insufficiency of the defense is not clearly apparent." *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-cv-00168-LHK, 2010 WL 3749284, at *1 (N.D. Cal. Sept. 23, 2010) (quotation omitted). In ruling on a motion to strike, a "court[ ] may not resolve disputed and substantial factual or legal issues . . . ." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010); *cf. Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.").

**B.    Discussion**

Under Federal Rule of Civil Procedure 8(b)(1), a defendant's answer must "(A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). Denials must also "fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). The Ninth Circuit has not, however, definitively held whether the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), also apply to affirmative defenses. Still, this Court has previously concluded—like the majority of courts in this district—that the *Twombly/Iqbal* standard should apply to affirmative defenses. *See, e.g.*, *Fed.*

*Trade Comm'n v. Directv, Inc.*, No. 15-CV-01129-HSG, 2015 WL 9268119, at *1 (N.D. Cal. Dec. 21, 2015); *accord BGC, Inc. v. Bryant*, No. 22-CV-04801-JSC, 2023 WL 4138287, at *4 (N.D. Cal. June 21, 2023)  (collecting cases).  "Thus, a party pleading an affirmative defense must state enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility."  *Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2018 WL 4468680, at *3 (N.D. Cal. Sept. 18, 2018) (quotation omitted).

But despite Packlane's urging, this is not a demanding standard, and Defendants need not allege extensive factual detail.  Having reviewed the answer, the Court finds that Defendants have generally alleged enough at this stage.  For example, they allege that:

- Packlane "has failed to pursue and/or exhaust all means for reducing any tax liability arising from the sale of its assets to Digital Room, including, but not limited to, appeals with the Internal Revenue Service."  *See* Dkt. No. 10 at 12.

- Packlane "provided inaccurate and/or incomplete tax-related information to Defendants in connection with the sale of Plaintiff's assets to Digital Room," and that Defendants relied on this information when advising Packlane about the structuring of the deal.  *Id.* at 12–16.

- Packlane had told Defendants that it would consult with an outside accounting firm regarding the sale of assets to Digital Room, but Plaintiff failed to do so.  *Id.*

- Defendants advised Plaintiff regarding the sale of its assets, Plaintiff was paid approximately $30 million from the sale, and despite any tax implications, "[n]o structure for the sale other than as an asset sale was a realistic possibility."  *Id.* at 14–16.  And even if structured differently, "the purchase price would have been lower such that Plaintiff would not have received more than it did as a result of the actual transaction."  *Id.*

- Defendants were not legally required to be "licensed to practice law in California to perform the services they rendered . . . ." *Id.* at 15–16.

That Defendants perhaps could have provided additional facts does not undermine the plausibility of their defenses.[3] The Court therefore **DENIES** the motion to the extent it is based on Defendants' purported failure to plead sufficient facts.

Packlane also contends some of the defenses—including "Active Fault"; "Complaint barred by Sole Negligence or Willful Misconduct"; and "Speculative Damages—should be stricken because they are not in fact affirmative defenses but simply attack Packlane's prima facie case. *See* Dkt. No. 12 at 18–19. Defendants do not respond to this argument at all. *See generally* Dkt. No. 23. The Court therefore strikes these defenses without leave to amend. Similarly, Packlane urges that Defendants' last defense, reserving the right to assert additional affirmative defenses, is also not an affirmative defense. *See id.* at 19. The Court agrees that this reservation is not itself an affirmative defense and is stricken without leave to amend. *See, e.g.*, *United States v. Ogden*, No. 20-CV-01691-DMR, 2021 WL 858467, at *4 (N.D. Cal. Mar. 8, 2021) (striking without leave to amend affirmative defense that "simply reserves the right to assert unspecified defenses later"). Nevertheless, the Court notes that Defendants are still not precluded from asserting additional affirmative defenses later. *Id.*

The Court therefore **GRANT IN PART** and **DENIES IN PART** the motion. The Court **STRIKES** Defendants' Fifth Affirmative Defense ("Active Fault"); Sixth Affirmative Defense ("Complaint barred by Sole Negligence or Willful Misconduct"); Twelfth Affirmative Defense ("Speculative Damages); and Fourteenth Affirmative Defense ("Unstated Additional Defenses"). Defendants make no effort to explain how, if at all, they could amend these defenses to cure the deficiencies that Packlane identified, so the Court strikes these defenses without leave to amend.

---

[3] Packlane suggests that Defendants' "Unclean Hands" affirmative defense sounds in fraud and must satisfy Federal Rule of Civil Procedure 9(b). *See* Dkt. No. 12 at 20–21. However, Packlane makes no effort to explain how this defense sounds in fraud, and the Court declines to strike the defense on that basis.

The Court otherwise **DENIES** the motion in its entirety.

## IV.     CONCLUSION

The Court **DENIES** the motion to change venue, Dkt. No. 14, and **GRANTS IN PART** and **DENIES IN PART** the motion to strike, Dkt. No. 12, as detailed above.  The Court further **CONTINUES** the telephonic case management conference from November 30, 2023, to December 12, 2023, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court further **DIRECTS** the parties to meet and confer and submit a revised joint case management statement by December 5, 2023.

**IT IS SO ORDERED.**

Dated:    11/20/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge